IN THE CIRCUIT COURT OF THE
20TH JUDICIAL CIRCUIT IN AND
FOR CHARLOTTE COUNTY, FLORIDA

TREVOR KING,

        Plaintiff,

CASE NO.: 25000017CA

v.

MARKEL AMERICAN INSURANCE
COMPANY,

        Defendant,

_____/

## COMPLAINT

Plaintiff, TREVOR KING (the "Insured"), hereby sues Defendant, MARKEL AMERICAN

INSURANCE COMPANY (the "Insurance Company"), and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.      This is an action for damages that exceeds Fifty Thousand and 00/100 Dollars

($50,000.00), exclusive of interest, costs and attorney's fees and equitable relief by way of a

Declaratory Judgment action.

2.      The Insured is an individual who at all times material hereto has resided in

Charlotte County, Florida.

3.      The Insurance Company is a Florida corporation qualified to do business in

Florida and has, at all times material hereto, been conducting business in Charlotte County,

Florida.

4.      Venue is proper in Charlotte County, Florida because the contract, which forms

the subject matter of this lawsuit, was executed in Charlotte County, Florida.

5.      All conditions precedent to the filing of this lawsuit have occurred, have been waived or have been performed.

**GENERAL ALLEGATIONS**

6.      At all times material hereto, in consideration of a premium paid by the Insured, there was in full force and effect a certain homeowners insurance policy issued by the Insurance Company with a policy number of MHY00000826603 (the "Policy"). A true and correct copy of policy is attached hereto as Exhibit "A".

7.      Accordingly, under the terms of the Policy, the Insurance Company agreed to provide insurance coverage to the Insured's property against certain losses. The damaged property was an insured vessel. (the Property).

8.      On or about October 7, 2024, while the Policy was in full force and effect, the Property sustained a covered loss due to the sinking of a boat caused by weather (the "Loss").

9.      The Insurance Company assigned claim number 24C11538 to the Loss.

10.      Subsequently, on or about November 14, 2024, the Insurance Company informed the Insured that it was denying coverage for the Loss on the basis that it was not covered by the Policy.  However, after diligent inspection of the Loss, it was obvious that the Property sustained damage, which the Insurance Company agreed to provide coverage for under the terms of the Policy.

11.      As of the date of the filing of this lawsuit, the Insurance Company has failed to: (i) acknowledge that payment would be forthcoming; and/or (ii) make any payment of insurance proceeds to the Insured. As a result of the foregoing, the Insurance Company has breached the Policy.

12.     The Insured has suffered and continues to suffer damages resulting from Insurance Company's breach of the Policy.

13.     The Insured has been obligated to retain the undersigned attorneys for the prosecution of this action and is entitled to a reasonable attorney's fee pursuant to Florida Statute Sections 627.428 and/or 626.9373.

## COUNT I
## <u>BREACH OF CONTRACT</u>

14.     The Insured reincorporate paragraphs 1 through 13 as if fully set forth herein.

15.     It is undisputed that the Insured and the Insurance Company entered into a written contract, the Policy, wherein the Insured agreed to pay a premium and the Insurance Company agreed to insure the Insured's Property.

16.     The Insured have paid all premiums due and owing as contemplated by the Policy; thus, fully performing their obligations under the Policy.

17.     The Insured's Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy.

18.     Furthermore, at all times material hereto, the Insured have satisfied all post-loss obligations to the best of their ability in accordance with the Policy.

19.     In contrast, the Insurance Company has failed to: (i) acknowledge coverage for the Loss; and/or (ii) acknowledge that payment would be forthcoming; and/or (iii) make any payment of insurance proceeds to the Insured. As a result of the foregoing, the Insurance Company has breached the Policy.

20.     As a direct and proximate result of the Insurance Company's breach of the Policy, the Insured has sustained damages.

WHEREFORE, the Insured respectfully requests that this Court enter judgment against the Insurance Company for damages, plus interest, court costs and reasonable attorney's fees pursuant to Sections 627.428 and/or 626.9373.

## COUNT II
## DECLARATORY JUDGMENT

21.     The Insured reincorporates paragraphs 1 through 13 as if fully set forth herein.

22.     There is a bona fide, actual, present, adverse, and practical need for this Court to render a declaration as to whether the Policy issued by Insurer to Insured provides coverage to Insured for the Loss.

23.     There is doubt between the Insured and Insurer regarding coverage of the loss which affects the rights and/or privileges of the Parties.

24.     This declaration deals with a present controversy as to the application of the law to facts regarding the insurance coverage available to Insured for the Loss.

25.     By filing this declaratory judgment action, the Insured is not requesting that the Court merely provide legal advice or answer questions propounded from curiosity.

26.     Based upon the foregoing, the Insured is entitled to a declaratory judgment, holding that coverage does exist for the Loss; thus removing any doubt that exists between the Parties.

27.     Pursuant to Section 86.081, Florida Statues, the Insured is entitled to costs.

WHEREFORE, the Insured respectfully seeks the entry of a declaratory judgment against the Insurer holding that the Loss is covered under the Policy, plus costs and attorney fees for bringing this action and such other relief as the Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable. Dated this 3rd day of January 2025.

**Respectfully Submitted by,**
**Your Insurance Attorney, PLLC.**
2601 South Bayshore Drive 5th Floor.
Coconut Grove, FL 33133
Phone No.: 1-888-570-5677
Fax: 1-888-745-5677
Email: YIA2@Yourinsuranceattorney.com
Secondary Email: Eservice@Yourinsuranceattorney.com

By*: /s/ Peter Diamond*
Peter Diamond, Esq.
Florida Bar No. 0180051



# MARKEL AMERICAN INSURANCE COMPANY

### GLEN ALLEN, VIRGINIA

| WATERCRAFT DECLARATIONS PAGE | EXHIBIT "A" |
|---|---|

| Policy Number: | Agency Number: | Effective Date/Transaction: |
|---|---|---|
| MHY00000826603 | 10369 - 0000001 | 07/01/2024    Rewrite |

| Policy Period: From 07/01/2024    To 07/01/2025 | 12:01 A.M. Standard Time at Your Mailing Address |
|---|---|

| Insured Name and Mailing Address | Your Agent    843-577-0800 |
|---|---|
| TREVOR KING<br>139 MARK TWAIN LANE<br>Rotonda West, FL 33947 | JOHNSON AND JOHNSON INC MGRS<br>PO BOX 899<br>CHARLESTON, SC 29402-0899 |

**Yacht Description:** 44' 1987 OCEAN SS                    **HIN:** XYU5444FC787

**Tender:**

**Yacht Mooring Location:** Englewood, FL 34224

**Navigation Limits:** Florida coastwise and inland waters between Jacksonville, FL and Pensacola, FL.

**Lay-Up:** None          **From:**          **To:**

| COVERAGE | LIMIT | ELECTED DEDUCTIBLE | PREMIUM |
|---|---|---|---|
| Protection and Indemnity | $300,000 | | $1,150 |
| Uninsured Watercraft | $300,000 | $0 | incl. |
| Medical Payments | $10,000 | $0 | incl. |
| Oil Pollution Liability | $1,076,000 | $0 | incl. |
| Longshore and Harbor Workers' Compensation | Incl. | | Incl. |

| | |
|---|---|
| Endorsment Premium: | $150.00 |
| Unit Premium: | $1,300.00 |
| Policy Taxes/Fees: | $0.00 |
| TOTAL ANNUAL PREMIUM: | $1,300.00 |

**Minimum Earned Premium** $200.00*

*$0 in GA, OH and SC

Insured          7/3/2024

# MARKEL AMERICAN INSURANCE COMPANY

## GLEN ALLEN, VIRGINIA

### WATERCRAFT DECLARATIONS PAGE

**MARKEL**

| Policy Number: | Agency Number: | Effective Date/Transaction: |
|---|---|---|
| MHY00000826603 | 10369 - 0000001 | 07/01/2024        Rewrite |

| Policy Period: From 07/01/2024 | To 07/01/2025 | 12:01 A.M. Standard Time at Your Mailing Address |
|---|---|---|

**Forms and Endorsements**

MHY5001-0114 - The Helmsman Yacht Policy
MHY5038-0108 - Florida Amendatory Endorsement
MHY5028-0220 - General Amendatory Endorsement
MHY5089-0223 - Wreck Removal Endorsement
MHY5099-0222 - Windstorm Haulout Condition
MIL1214-0917 - Trade or Economic Sanctions Endorsement

Policy Cancelled for Nonpayment

**Loss Payee**

| **Producer** | **Customer Ref#** |
|---|---|

**Signed on** 2024-07-02        **at** CHARLESTON, SC        *John K Clarke*

MHY5000-0218

7/3/2024

Page 2 of 2



# MARKEL AMERICAN INSURANCE COMPANY

## CONSUMER NOTICE OF INSURANCE SCORING

To offer an accurate quote in connection with this application for insurance, we will review the unit owner's credit report or obtain or use a credit-based insurance score based on the information contained in that credit report.  We may use a third party in connection with the development of the unit owner's insurance score.  Future reports may be used to update or renew insurance.



# Markel American Insurance Company

# THE MARKEL HELMSMAN YACHT POLICY

TABLE OF CONTENTS

**THE MARKEL HELMSMAN YACHT POLICY**

READ YOUR POLICY CAREFULLY.

**Beginning on Page**

**INSURING AGREEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

**GENERAL CONDITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

**GENERAL EXCLUSIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

**PHYSICAL DAMAGE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

**PROTECTION AND INDEMNITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

**OIL POLLUTION LIABILITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

**LONGSHORE AND HARBOR WORKERS' COMPENSATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

**MEDICAL PAYMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

**UNINSURED AND UNDERINSURED WATERCRAFT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

## INSURING AGREEMENT

In return for the premium payment and compliance with all applicable provisions of this policy and any endorsements, we agree to provide the insurance coverages you have selected as shown on the Declarations Page, which is part of this policy.

By accepting this policy, you agree that the statements on the Declarations Page and any application are your agreements and representations. This policy is issued in reliance upon the truth of your representations during the application process and it includes all agreements existing between you and us or any of our representatives.

It is warranted that the **insured yacht** is seaworthy at the inception of this insuring agreement. Violation of this warranty voids this insuring agreement from its inception.

## DEFINITIONS

Throughout this policy most words and phrases that have special meanings appear in **bold**. Only the pronouns "we", "our", "us", "you", "your", and "yours" are defined but do not appear in **bold**. This section defines some of the more general terms used in this policy. **Bold** terms that are not listed in this section, are defined within the sections they appear.

1.  You, your and yours refer to the 'Insured' named on the Declarations Page.

2.  The words we, us, and our refer to the company, shown on the Declarations Page, which is providing this insurance.

3.  **Actual cash value** means the **replacement cost** of the lost or damaged property less depreciation.

4.  **Bodily injury** means physical injury, sickness or disease sustained by a person including death resulting from any of these.

5.  **Constructive total loss** means that the cost to recover and/or repair the damaged property will exceed the applicable limit of insurance.

6.  **Contaminant** means any petroleum product, chemical, lubricant, or solvent normally associated with the use and operation of a watercraft.

7.  **Design defect** means a flaw in the structural plan of the **insured yacht's** hull or machinery, or any of its components. **Design defect** does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, **latent defects**, or **manufacturer's defects**.

8.  **Family member** means any person related to you by blood, marriage, or adoption (including a ward or foster child) who resides in your household.

9.  **Insured** means you and any person, firm, corporation or legal entity that may be operating the **insured yacht** with your prior permission. However, this does not include a paid captain or any paid crew member of the **insured yacht**. Nor does it include any person, firm, corporation or other legal entity or any of their agents or employees operating a shipyard, boat repair facility, marina, yacht club, sales agency, chartering agency, yacht broker, boat service station, salvor, towing service or similar organization.

10. **Insured yacht** means:
    a.  The yacht shown on the Declarations Page, including its spars, sails, rigging, tackle, fittings, machinery and equipment necessary for the safe operation and maintenance of the yacht. It also includes **tenders**.
    b.  A **newly acquired yacht**.

11. **Latent defect** means a flaw in the material of the **insured yacht's** hull or machinery existing when the **insured yacht** or its components were built and not discoverable by common means of testing. **Latent defect** does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **manufacturer's defects**, or **design defects**.

12. **Manufacturer's defect** means the improper, incorrect or inadequate manufacturing process of the **insured yacht's** hull or machinery or any of its components. **Manufacturer's defect** does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **latent defects**, or **design defects**.

13. **Marine electronics** means electronic devices designed specifically for marine navigation, including fish finders, or marine communication.

14. **Newly acquired yacht** means a yacht that you acquire during the policy period, which is similar to the yacht described on the Declarations Page and is no more than 5 years old, provided we insure all yachts owned by you, and you pay any additional premiums due. The limit of insurance applicable to any **newly acquired yacht** will be the lesser of its **actual cash value** or your purchase price, but not more than 150% of the highest limit shown on the Declarations Page for 'Hull'.

    Coverage as a **newly acquired yacht** will cease if any of the following occur:
    a.  this policy expires;
    b.  a period of 15 days has passed since you acquired the yacht; or
    c.  you report the new yacht and its values to us with a request for insurance coverage. If we determine the new yacht to be an acceptable risk, we will charge you additional premium and amend this policy or we will issue a new policy for your new yacht from the date you purchased the yacht.

15. **Non-owned yacht** means any watercraft being operated by you with the owner's permission that is not:
    a.  owned in whole or in part by you or any **resident**;
    b.  rented or under charter to you;
    c.  being used for other than private pleasure;
    d.  available for your regular use;
    e.  more than 5 feet longer than the **insured yacht**;
    f.  designed for, or capable of, speeds in excess of 65 miles per hour; or
    g.  a **personal watercraft**.

16. **Occurrence** means a single event or an accident or series of accidents caused by a single event.

17. **Property damage** means damage to tangible property.

18. **Personal watercraft** means a vessel which uses an inboard engine powering a water jet pump as its primary source of motive power, and which is designed to be operated by a person sitting, standing, or kneeling on the vessel.

19. **Replacement cost** is the least of the following amounts:
    a.  the applicable limit shown on the Declarations Page;
    b.  the cost to repair or replace the lost or damaged property using other new property:
        i.   of comparable material and quality; and
        ii.  used for the same purpose; or
    c.  Starting the 6th year from the date of manufacture the cost to replace the lost or damaged property with substantially identical property.

20. **Resident** means any person who lives in your home.

21. **Tender** means any auxiliary watercraft, other than a **personal watercraft**, whose main purpose is to service the **insured yacht** for purposes of delivering supplies or ferrying passengers to and from shore. The **tender** must be able to be stored on board the **insured yacht** while the **insured yacht** is under way.

22. **Windstorm** means tropical depressions, tropical storms or hurricanes as designated by the National Weather Service and/or National Hurricane Center.

## GENERAL CONDITIONS

1. Use of the **Insured Yacht**
   If you violate any of the following conditions, coverage will be suspended until you are no longer in violation:
   a. The **insured yacht** is for private pleasure use only. Coverage is not provided for charter, hire, lease or any other commercial use. Recreational entertaining of the **insured's** business clients on the **insured yacht** is not considered commercial use.
   b. The **insured yacht** may be towed overland on its trailer, provided the weight of the **insured yacht**, trailer and any other equipment do not exceed the towing capacity as provided by the manufacturer of the towing vehicle. The **insured yacht** may not be transported overland more than 350 miles by any contract or common carrier. The **insured yacht** may not be transported overland outside of the Continental United States by any contract or common carrier. Any contract or common carrier must be licensed and must provide a certificate of insurance covering the **insured yacht**. This policy is then excess to the coverage provided by the licensed contract or common carrier.
   c. Coverage is not provided anytime the **insured yacht** is being transported as waterborne cargo.
   d. If 'Lay-Up' is shown on the Declarations Page, during the lay-up period shown:
      i. If the Declarations Page indicates that lay-up is afloat, then the **insured yacht** must be in a safe berth for storage and the **insured yacht** may not be operated except as required to change berths within the immediate berthing location. However, if you are required to move the **insured yacht** for the purpose of safety, repairs, and alterations or for betterments and improvements, coverage will not be suspended.
      ii. If the Declarations Page indicates that lay-up is ashore, then the **insured yacht** may not be afloat. An **insured yacht** on a permanent lift or hoist will be considered laid up ashore if it is out of commission and properly winterized.

2. Policy Period/Territory
   This policy applies only to loss which occurs during the policy period as shown on the Declarations Page, and:
   a. on land within the United States of America and Canada; or
   b. on land or water within the navigation limits shown on the Declarations Page.

3. Misrepresentation or Fraud
   All insurance provided by this policy will be null and void if you, at any time, either intentionally conceal or misrepresent any fact, regardless of materiality, or if you misrepresent or conceal any material fact regardless of intent. No action or inaction by us will be deemed a waiver of this provision.

4. Notice of Cancellation
   You may cancel this policy by returning it to us or our authorized agent, or by advising us or our authorized agent in writing, stating the future date you want the policy to be cancelled.

   We may cancel this policy by delivering or mailing notice of cancellation to the first named 'Insured' at the last address shown in our records at least:
   a. ten (10) days before the cancellation takes effect if:
      i. the cancellation is for nonpayment of premium; or
      ii. this policy has been in effect for less than sixty (60) days and is not a renewal policy.
   b. thirty (30) days before the cancellation takes effect in all other cases.

   After this policy has been in effect for sixty (60) days, or if this is a renewal policy, we will cancel only:
   a. for nonpayment of premium due;
   b. for misrepresentation or fraud;
   c. for substantial breach of your duties under this policy;
   d. if the risk changed substantially since the policy was issued; or
   e. for failure to comply with our underwriting requirements within 60 days of the term effective date.

   Proof of mailing of this notice to the first named 'Insured' will be sufficient proof that notice of cancellation was given. The date of the cancellation stated in the notice will become the end of the policy period.

   This policy will terminate without any written notice and all premiums will be deemed fully earned by us when we pay for a total loss or a **constructive total loss**.

5.  Return Premium
    If this policy is cancelled, you may be entitled to a premium refund. If we cancel the policy, any return premium will be computed on a pro-rata basis. If you cancel the policy or if the policy is cancelled for nonpayment of premium, any return premium will be computed on a 90% pro-rata basis. The return premium cancellation is subject to our minimum earned premium. Any return premium will be paid to you within a reasonable amount of time after the cancellation.

6.  Conformity to Statute
    This policy is subject to established principles and precedents of federal admiralty law of the United States of America, but where no substantive principle or precedent is applicable state law will apply. Any provision of this policy that conflicts with applicable law or regulation is hereby amended to conform to the minimum requirements of the law or regulation.

7.  Policy Changes
    No change or waiver may be effected in this policy except by endorsement issued by us. If a premium adjustment is necessary, we will make the adjustment as of the effective date of the change.

    When we broaden coverage during the policy period, without charge, the policy will automatically provide the broadened coverage.

8.  Legal Action Against Us
    a.  No suit or action may be brought against us unless there has been full compliance with all terms of this policy.
    b.  With respect to coverage provided under **PHYSICAL DAMAGE**, no suit or action may be brought against us unless the action is brought within 12 months after the date you first have knowledge of the loss.
    c.  With respect to all other coverage under this policy, no suit or action may be brought against us until the amount of a claim against you has been determined or agreed upon.
    d.  Nothing in this policy gives any person or organization the right to join us as defendants in a suit brought against you.

9.  No Benefits to Others
    No person or organization which has custody of the **insured yacht** and is to be paid for services, will benefit from this insurance.

10. Transfer of Interest
    We do not provide any coverage under this policy if you sell, assign, transfer or pledge the insured property unless prior written consent has been obtained from us.

    In the event of your death, this policy will remain in effect until the end of the policy period for:
    a.  persons covered under this policy at the time of your death;
    b.  your legal representative while acting within the scope of duties of a legal representative; or
    c.  any person having proper custody of the **insured yacht** until a legal representative is appointed.

11. Right of Recovery
    You may have the right to recover from another party who is responsible for your loss. If we pay your loss under this policy, this right of recovery will belong to us up to the amount that we have paid you. If you, or anyone acting on your behalf, take any action that impairs our right to recover, we may consider this policy void and without effect as to such loss. However, signing written contracts for storage or slip rental or registration forms for sailboat races that include a waiver of subrogation provision will not void this policy.

12. Claim or Suit Against You
    You must immediately notify us and send us every demand notice, summons or other legal papers received by you or your representative, if a claim is made or a suit is brought against you for liability that is covered under this policy. We will pay the ensuing cost of the suit and have the sole right to control the defense of the suit. We also have the option of naming attorneys to represent you in the suit.

13. General Duties Following a Loss
    You must report immediately to us or our authorized agent any accident, loss, damage, or expense which may

be covered under this policy. This report should give full details about when and where the loss occurred, how it happened and the name and address of all the people involved including all witnesses. You are required to immediately notify the authorities of any theft, vandalism or malicious damage to your insured property, if any injury is involved, or if required by law. You must also permit us to inspect any damage before repairs are made.

After requested by us, you must file within ninety (90) days thereof, with us or our authorized agent, a written statement about the details of the loss. This statement must be signed and sworn by you.

You, as often as we may reasonably require, will:
a.  exhibit to any person we designate all that remains of any property that may be covered under this policy;
b.  submit and subscribe to examinations under oath by any person named by us. If more than one person is examined, we have the right to examine and receive statements separately from each person and not in the presence of the others;
c.  produce for examination and permit extracts and copies of all books of account, bills, invoices, other vouchers and any other tangible items related to the claimed loss, or certified copies thereof if the originals are lost, at such reasonable time and place as may be designated by us or our representative.

You must cooperate with us in the investigation, defense or settlement of any loss.

If you do not comply with these general duties, then no coverage for the loss will be provided.

14. Other Insurance
    This policy is excess over any other valid and collectible insurance.

15. Nonrenewal
    If we decide not to renew your policy, we or our authorized representative will mail to the first named 'Insured', at the address shown on the Declarations Page, written notice of nonrenewal. The written notice will be mailed to the first named 'Insured' at least thirty (30) days before the end of the policy term. A copy of the notice will also be sent to any lienholder named on the Declarations Page. If we decide not to renew your policy, our mailing of notice to the address of the first named 'Insured' shown on the Declarations Page will constitute proof of notice as of the date we mail it.

## GENERAL EXCLUSIONS

No coverage is provided under this policy for loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of:

1. Extended Radioactive Contamination
    a.  ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;
    b.  the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;
    c.  any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;
    d.  the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purpose.

However, if while the **insured yacht** is within the policy territory, a fire arises directly or indirectly from one or more of the above causes in items a., b., and d., then any loss or damage arising directly from that fire will, subject to the provisions of this policy, be covered. No coverage is provided for any loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

2. War or any warlike operation. This includes declared and undeclared wars, civil wars, revolutions or any civil unrest.

3. The lawful or unlawful capture, seizure, requisition or detainment of your **insured yacht** by a civil authority or any attempt at any of these.

4. An actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

5. Preparation for or participation in any race, speed, or stunting contest. This does not apply to sailboats.

6. Willful or intentional misconduct or criminal act on the part of any **insured** or during any illegal activity on the part of any **insured**.

## PHYSICAL DAMAGE

1. Coverage
   a. Hull Coverage (Including **Tenders**)
      i. Coverage
         We will cover sudden accidental direct physical loss or damage to the **insured yacht**.

      ii. Under 'Hull' Coverage, we do not cover:
          1) dock boxes, moorings, cradles, lifts or shore stations;
          2) **personal watercraft**;
          3) items which are covered elsewhere under this policy; or
          4) fuel.

      iii. What We Pay
           1) In the event of a total loss or **constructive total loss**, we will pay the applicable limit on the Declarations Page. However, if there is a total loss or **constructive total loss** to a **tender** that is not described on the Declarations Page and a separate limit for 'Tender Coverage' is not shown on the Declarations Page for it, then the loss to such a **tender** will be adjusted as a partial loss to the **insured yacht**. The most we will pay for loss or damage to such a **tender** will be 5% of the 'Hull' limit, subject to a maximum of $50,000.00.
           2) In the event of a partial loss, we will pay for damage on a **replacement** cost basis, except as described in the Actual Cash Value provision.
           3) Actual Cash Value
              We will pay for repairs to or replacement of the following lost or damaged property on an **actual cash value** basis:
              a) sails and protective covers of any type;
              b) outdrive units and outboard motors starting with the 6th year from the date of manufacture;
              c) a **tender** that is not described on the Declarations Page and a separate limit for 'Tender Coverage' is not shown on the Declarations Page for it;
              d) carpeting, upholstery, cushions, and any fabric; and
              e) bottom paint.

              We pay for repairs that are made in accordance with the manufacturer's specifications or accepted repair practices, including spot repair.

              If the **insured yacht** was damaged before the loss, we will not pay to repair the prior damage. In the event of a total loss or **constructive total loss**, the amount we will pay will be reduced by the cost that would have been incurred had the prior damage been repaired.

      iv. Exclusions
          We will not pay for loss, damage or expense caused by or resulting from:
          1) failure to maintain the **insured yacht** (including its machinery and equipment) in good condition so that the **insured yacht** cannot be damaged by ordinary weather or water conditions or the rigors of normal use.  However, we will pay for loss, damage or expense caused by ice and freezing,

provided you contracted with a commercial marina or repair facility for necessary winterization maintenance;

2) wear and tear, gradual deterioration, inherent vice, corrosion, rust, dampness of atmosphere;
3) **manufacturer's defects** or **design defects**;
4) **windstorm** for any **tender** that is not described on the Declarations Page and a separate limit for 'Tender Coverage' is not shown on the Declarations Page;
5) marring, electrolysis, osmosis, blistering, mold, mildew, wet or dry rot;
6) diminution of value;
7) **latent defects**, however, any resulting direct physical loss to the **insured yacht** will be covered.

However, for causes of loss under Exclusions 1), 2) or 3) above, resulting direct physical loss to the **insured yacht** caused by fire, explosion, sinking, collision or stranding is covered. We will also pay for resulting direct physical loss to the **insured yacht** for a dismasting if a professional rig inspection was completed within the last two years and any deficiencies that were identified with the standing rigging or chain plates were remedied as recommended and the work was completed by a professional rigger.

b. Personal Effects Coverage
   i. Coverage
   We will cover sudden accidental direct physical loss or damage to your personal effects, and those of your guests and unpaid crew members, while on board the **insured yacht** or while being loaded on or unloaded from the **insured yacht**. Personal effects are items such as sports equipment, clothing, and other personal items.

   ii. Under 'Personal Effects' Coverage, we do not cover:
      1) accounts, bills, money, traveler's checks, or any other valuable papers or documents;
      2) jewelry, watches or furs;
      3) watercraft including **personal watercraft**;
      4) property which is covered under 'Hull' Coverage; or
      5) dock boxes, moorings or cradles.

   iii. What We Pay
   We will pay the **actual cash value** of the personal effects. Our liability for any one **occurrence** will not exceed the limit for 'Personal Effects' on the Declarations Page.

   iv. Exclusions
   We will not pay for loss, damage or expense caused by or resulting from:
      1) wear and tear, gradual deterioration, vermin, or inherent vice;
      2) mechanical or electrical breakdown, unless caused by lightning;
      3) theft or unexplained disappearance unless there are visible marks of forcible entry or removal;
      4) **windstorm**; or
      5) diminution in value.

c. Trailer
   i. Coverage
   We will cover sudden accidental direct physical loss or damage to your trailer, but only if used exclusively for transporting the **insured yacht**.

   ii. What We Pay
   We will pay the **actual cash value** of the trailer. Our liability for any one **occurrence** will not exceed the limit for 'Trailer' on the Declarations Page.

   iii. Exclusions
   We will not pay for loss, damage or expense caused by or resulting from:
      1) wear and tear, gradual deterioration, or inherent vice;
      2) mechanical breakdown; or
      3) diminution in value.

d. Rental Reimbursement Coverage
  i. Coverage
  If the **insured yacht** is damaged by a covered cause of loss, we will reimburse you for the reasonable expenses you incur to charter or rent a replacement yacht. We will only reimburse you if the replacement yacht is similar to the **insured yacht** and has a rated speed not in excess of 45 miles per hour. We will only reimburse you:
    1) during the **repair period**;
    2) if the **repair period** is longer than 2 days; and
    3) for expenses you incur after the first 2 days of the **repair period**.

  **Repair period** as used in this coverage means the period of time that begins with the date of the sudden accidental direct physical loss or damage to the **insured yacht**; and ends on the date when the **insured yacht** should be repaired, rebuilt or replaced with reasonable speed and similar quality. The expiration date of this policy will not cut short the period of repair.

  ii. Exclusions
  We will not pay for hotels, motels or any other lodging ashore, dockage, rental cars or other ground transportation, airfare, meals, groceries or food. We will not reimburse you for costs when the replacement yacht was rented from any **family member**.

e. Emergency Towing and Assistance
  i. Coverage
  We will reimburse the reasonable expenses you incur resulting from the following services to the **insured yacht** if help is not available and you must obtain commercial assistance:
    1) towing to the nearest place where necessary repairs can be made;
    2) delivery of fuel, oil, parts or loaned battery (excluding the cost of the items themselves) or emergency labor, while away from a safe harbor.

  If 'Trailer' coverage is shown on the Declarations Page, this coverage also applies to such expenses incurred because the trailer is disabled. However, we will not pay for delivery of fuel to any conveyance transporting the **insured yacht** if the reason the trailer is disabled is because the conveyance is out of fuel.

  ii. What We Pay
  The most we will pay for any one **occurrence** is the limit for 'Emergency Towing and Assistance' shown on the Declarations Page.

f. Windstorm Extra Expense
  i. Coverage
  If a premium is shown on the Declarations Page for 'Hull' and if a **windstorm** watch or warning is issued for the area where your **insured yacht** is moored, we will share the costs that you incur to protect the **insured yacht** from loss or damage:
    1) to have the **insured yacht** professionally hauled out of the water at the time the watch or warning is issued for your mooring area and to have the **insured yacht** launched after the watch or warning has ended; or
    2) to hire a qualified individual, who is not an **insured** under this policy, to navigate the **insured yacht** to a safe harbor as a result of the watch or warning; or
    3) to hire a marina or boat yard to remove and safely stow the covers or other equipment that is normally stored on the deck of the **insured yacht**. Expense for the acquisition of lines, anchors and additional equipment to secure the **insured yacht** are not included in this coverage.

  We will also share the reasonable costs described above that you incur within the twenty-four (24) hour period prior to the issuance of a watch or warning, provided that a watch or warning is subsequently issued for the area where your **insured yacht** is moored.

  ii. What We Pay
  We will pay 50% of your actual incurred expenses, subject to a maximum of $1000 for any one **windstorm**, and $2,000 total in any single policy period.

2.  Loss Conditions
    a.  Deductibles
        i.  We will not pay for loss, damage or expense for any one **occurrence** until the amount of the loss, damage or expense exceeds the applicable deductible shown on the Declarations Page.
        ii.  The deductible for a **tender** is $500.
        iii.  The deductible applicable to **marine electronics** for **insured yachts** for all covered causes of loss except theft without evidence of forced removal or forced entry is $500. If the above conditions are not met, the deductible shown for 'Hull' on the Declarations Page applies.
        iv.  In the event that loss occurs as a result of one **occurrence** and the loss would require the application of more than one deductible, only the highest deductible will be applied to the loss.
        v.  If you have a total loss or **constructive total loss** to an **insured yacht** or a **tender**, then no deductible will be applied to the loss.
        vi.  The policy deductible does not apply to the costs incurred under 'Windstorm Extra Expense'.

        However, if a Windstorm Deductible is shown on the Declarations Page, then the Windstorm Deductible will apply to all partial, total or **constructive total losses** caused by or resulting from any **windstorm**.

    b.  Salvage and Abandonment
        If we pay the limit as shown on the Declarations Page for 'Hull' or 'Trailer', we reserve the right to take possession of the remains if we elect. At our request, you will transfer the title of the property to us or to a salvage buyer appointed by us. Any recovery or salvage on a loss will accrue entirely to our benefit until the sum paid by us has been made up.

        We are not obligated to accept any property you abandon, nor are we obligated to pay any storage fees incurred because you abandoned any property to any other person or organization.

    c.  Payment of Loss
        We will pay losses within 30 days after the earliest of the following:
        i.  we reach agreement with you;
        ii.  final judgment is rendered in a court of law;
        iii.  an appraisal award is filed with us; or
        iv.  a proof of loss is accepted by the company.

    d.  Appraisal
        If you dispute our evaluation of the amount of the loss, then you must submit a written request for appraisal within one year of the date of loss. You and we will then each appoint and pay for a competent and disinterested appraiser. If the two appraisers cannot agree on the amount of the loss, the appraisers or a judge of the local court of record will select an umpire who will decide any differences. The expense of the umpire and all other expenses of the appraisal will be shared equally by you and us. An award in writing by any two such persons will determine the amount of your loss. You and we will be bound by that amount.

        Appraisal is not available where there is a dispute as to the existence of coverage. Nothing herein will prejudice or in any way impact our right to contest coverage and to bring suit in a court of competent jurisdiction.

    e.  Protect and Recover
        In the event of a covered loss to the **insured yacht**, you must protect the **insured yacht** from further loss and make every effort to recover it. We will pay the reasonable costs you incur under this condition in addition to any other payments we make for loss or damage under Hull coverage, but not to exceed the limit for 'Hull' on the Declarations Page. We will not cover any further loss incurred due to your failure to protect the **insured yacht**.

    f.  Loss Payee
        If a 'Loss Payee' is named on the Declarations Page, any loss will be paid to you and the 'Loss Payee' as your and their interests appear. If your interest in the **insured yacht** is terminated, any loss payment will only recognize the 'Loss Payee's' interest. No change in title or ownership of the **insured yacht** or any acts of yours will affect the 'Loss Payee's' interest in this policy except that the 'Loss Payee's' interest will

not be protected in the event of fraud, misrepresentation, material omission, or willful or intentional misconduct or criminal act on the part of any **insured** or during any illegal activity on the part of any **insured**.

You or the 'Loss Payee' must let us know of any change of ownership or any increase in hazard of which you or the 'Loss Payee' are aware.

If you fail to give us sworn proof of loss within 30 days when requested by us, the 'Loss Payee' will do so within sixty (60) days thereafter, in form and manner as provided by the policy, and further, shall be subject to the provisions of the policy relating to duties following a loss, appraisal, time of payment and of bringing suit.

Payment may be made to both jointly, or separately, at our discretion.

<div align="center">

### PROTECTION AND INDEMNITY
</div>

Coverage

We will cover damages for **bodily injury** or **property damage** for which an **insured** becomes legally liable through ownership, maintenance, or use of the **insured yacht**, or through a **non-owned yacht** being operated by you with the owner's permission. This includes:

1) coverage for **property damage** to a **non-owned yacht**;
2) with respect to a paid captain or paid crew member, obligations and duties under Jones Act or general maritime law;
3) the cost of the bond to release the **insured yacht** if the **insured yacht** is arrested, confiscated, or detained because of injury or damage to which this coverage applies.

If a premium is shown on the Declarations Page for 'Hull', we will also cover the reasonable expenses incurred to raise, remove or dispose of the wreck of the **insured yacht**, or **non-owned yacht**, if you are legally obligated to do so. This is not additional insurance, but is included in the limit of 'Protection and Indemnity' coverage.

Wreck means the **insured yacht** has been damaged to such an extent as to render the **insured yacht** not navigable and we determine the **insured yacht** to be a total or **constructive total loss**.

What We Pay

We will pay no more than the limit for 'Hull' shown on the Declarations Page for all **property damage** to a **non-owned yacht** resulting from an **occurrence**.

For all other losses, we will pay no more than the limit for 'Protection and Indemnity' shown on the Declarations Page for all damages, losses or release bonds resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

Exclusions

We will not pay for:

1) liability assumed under any contract or agreement;
2) **bodily injury** or **property damage** while the **insured yacht** or a **non-owned yacht** is being transported on land;
3) any fine or penalty assessed by any government unit;
4) **bodily injury** or **property damage** sustained by any **insured** or **resident**;
5) **bodily injury** or any other payment or obligation to any person eligible to receive any benefits required to be provided by you. This includes, but is not limited to, any employment, unemployment, disability, worker's compensation, non-occupational disability, occupational disease law, Federal Longshoremen's and Harbor Worker's Compensation Act, or any state or federal workers' or workmen's compensation law or occupational disease law or migrant or seasonal workers law;
6 ) any liability covered or excluded under the **OIL POLLUTION LIABILITY** section of this policy; or
7) punitive or exemplary damages or associated interest.

Defense

We have the right and duty to defend any suit to which this insurance applies. However, we may investigate and settle any claim or suit at our discretion. Our duty to defend any claim or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the **occurrence** equals the limit for 'Protection and Indemnity' shown on the Declarations Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

<div align="center">

**OIL POLLUTION LIABILITY**

</div>

Coverage

We will cover:
1) the sums which you are legally liable to pay as a result of **property damage** or **bodily injury** arising out of an **oil pollution incident**;
2) the reasonable costs directly associated with the actual clean-up of an **oil pollution incident**;
3) the reasonable costs or expenses legally imposed upon you by those government authorities assisting or monitoring an **oil pollution incident**;
4) administrative charges and civil expenses levied against you by a judiciary body as a result of an **oil pollution incident**;
5) the reasonable costs and expenses to defend you against legal action from an **oil pollution incident**.

**Oil pollution incident** means the sudden, accidental and unexpected emission, discharge, release, leakage, escape or spillage of a **contaminant** from an **insured yacht** or **non-owned yacht** in an accident that is specific in place and time within the policy period.

What We Pay

We will pay no more than the limit for 'Oil Pollution Liability' shown on the Declarations Page for all damages or expenses resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

Exclusions

We will not pay for:
1) liability assumed under any contract or agreement;
2) any fine or penalty assessed by any governmental unit;
3) an **oil pollution incident**, if any **insured** knows, or has reason to know, of the incident and fails to report it as required by law(s);
4) **property damage** sustained by an **insured** or **resident**;
5) liability for natural resource damage unless legal action commences within one (1) year of the incident;
6) an **oil pollution incident** unless you provide all reasonable cooperation and assistance with **containment** and clean-up operations as is required by law or by someone acting under their legal authority; or
7) punitive or exemplary damages or associated interest.

Defense

We have the right and duty to defend any suit to which this insurance applies. However, we may investigate and settle any claim or suit at our discretion. Our duty to defend any claims or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the **occurrence** equals the limit for 'Oil Pollution Liability' shown on the Declarations Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

## LONGSHORE AND HARBOR WORKERS' COMPENSATION

Coverage

We will cover any compensation payments you are responsible for under the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950) and any amendments to this act, as long as your responsibility arises from your ownership or use of an **insured yacht**. We will comply with all the provisions of this Act, and with any rules, regulations, orders and decisions of the Office of Workers' Compensation Programs of the United States Department of Labor.

## MEDICAL PAYMENTS

Coverage

We will cover the reasonable charges for necessary medical, surgical, x-ray, dental, ambulance, hospital and professional nursing services and funeral service expenses incurred within one year from the date of an accident causing **bodily injury** to any person while in, upon, boarding or leaving an **insured yacht**.

The injured person must submit to an examination by a physician selected by us when and as often as we reasonably require.

What We Pay

We will pay no more per person than the limit for 'Medical Payments' shown on the Declarations Page for any **occurrence**. This is the most we will pay, regardless of the number of claims made or watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

Each person seeking payment under this coverage must:
1) provide us with written authorization for release to us copies of pertinent medical reports and records; and
2) submit a valid proof of loss within one year of the incurred expenses.

Exclusions

Payments under this section will not be made to, or on behalf of, any person:
1) injured while trespassing;
2) for whom liability is assumed by you under contract or agreement;
3) injured while the **insured yacht** is being transported on land;
4) hired to work for or on behalf of any **insured**; or
5) **bodily injury** or any other payment or obligation to any person eligible to receive any benefits required to be provided by you. This includes, but is not limited to, any employment, unemployment, disability, worker's compensation, non-occupational disability, occupational disease law, Jones Act, Federal Longshoremen's and Harbor Worker's Compensation Act, or any state or federal workers' or workmen's compensation law or occupational disease law or migrant or seasonal workers law.

Admission of Liability

Any payment made under this section is not an admission of liability by you or us.

## UNINSURED AND UNDERINSURED WATERCRAFT

Coverage

We will pay all sums you or a **family member** are legally entitled to recover as damages from the owner or operator of an **uninsured watercraft** or **underinsured watercraft**. The damages must result from **bodily injury** caused by an **occurrence**, sustained by you or a **family member** while on board the **insured yacht**. The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the **uninsured watercraft** or **underinsured watercraft**.

The injured person must submit to an examination by a physician selected by us when and as often as we reasonably require.

**Uninsured watercraft** means a waterborne vehicle of any type:
1) To which no **bodily injury** bond or policy applies at the time of the **occurrence**.
2) Which is a watercraft whose operator or owner cannot be identified and which hits:

a) you or any **family member** while on board the **insured yacht**; or
b) an **insured yacht**.

**Underinsured watercraft** means a waterborne vehicle of any type for which the sum of all liability bonds or policies at the time of the **occurrence** is less than the limit of this coverage.

An **uninsured watercraft** or **underinsured watercraft** does not include any watercraft:
1) owned, operated by or available for the regular use of you or any **family member**;
2) which is a **non-owned yacht**; or
3) owned by any governmental unit or agency.

What We Pay
We will pay no more than the limit for 'Uninsured and Underinsured Watercraft' shown on the Declarations Page for all damages or losses resulting from any one **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

If an **underinsured watercraft** causes the **bodily injury**, we will pay only after all other liability bonds or policies have been exhausted by judgments or payments.

Any amount payable under this coverage will be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under **MEDICAL PAYMENTS**. Any sums paid under this coverage will reduce any amount you or a **family member** are entitled to recover under **MEDICAL PAYMENTS**.

Each person seeking payment under this coverage must:
1) provide us with written authorization for release to us copies of pertinent medical reports and records; and
2) submit a valid proof of loss within one year of the incurred medical or funeral expense.

Exclusions
We will not pay for:
1) any claim settled without our consent;
2) **bodily injury** to any person on board the **insured yacht** without your permission;
3) the direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits law or any similar law;
4) damages where there is no evidence of physical contact between the **insured yacht** and either an unidentified or **uninsured watercraft**; or
5) **bodily injury** to any person arising out of the transportation of an **uninsured watercraft** or **underinsured watercraft** on land.

This Policy is signed at the Home Office of the company by its president and secretary.

**MARKEL AMERICAN INSURANCE COMPANY**
Glen Allen, Virginia

Kathleen A. Sturgeon
Secretary

Alex Martin
President

**Administrative Office:**
P.O. Box 906
Pewaukee, WI 53072-0906
800-236-2862

# MARKEL AMERICAN INSURANCE COMPANY

**MARKEL**

---

### FLORIDA AMENDATORY ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel Helmsman Yacht Policy is amended as follows:

**GENERAL CONDITIONS**, 4. Notice of Cancellation is deleted in its entirety and replaced with the following:

4. Notice of Cancellation
    You may cancel this policy by returning it to us or our authorized agent, or by advising us or our authorized agent in writing, stating the future date you want the policy to be cancelled.

    We may cancel this policy by delivering or mailing notice of cancellation to the first named 'Insured' at the last address shown in our records at least:
    a. ten (10) days before the cancellation takes effect if the cancellation is for nonpayment of premium;
    b. twenty (20) days before the cancellation takes effect in all other cases if this policy has been in effect for less than ninety (90) days and is not a renewal policy; or
    c. forty-five (45) days before the cancellation takes effect in all other cases.

    After this policy has been in effect for ninety (90) days, or if this is a renewal policy, we will cancel only:
    a. for nonpayment of premium due;
    b. for misrepresentation or fraud;
    c. for substantial breach of your duties under this policy;
    d. if the risk changed substantially since the policy was issued; or
    e. for failure to comply with our underwriting requirements within 90 days of the term effective date.

    Proof of mailing of this notice to the first named 'Insured' will be sufficient proof that notice of cancellation was given.  The date of the cancellation stated in the notice will become the end of the policy period.

    This policy will terminate without any written notice and all premiums will be deemed fully earned by us when we pay for a total loss or a **constructive total loss**.

**GENERAL CONDITIONS**, 8. Legal Action Against Us, item b. is deleted in its entirety and replaced with the following:

    b. With respect to coverage provided under **PHYSICAL DAMAGE**, no suit or action may be brought against us unless the action is brought within 5 years after the date you first have knowledge of the loss.

# FLORIDA AMENDATORY ENDORSEMENT

**GENERAL CONDITIONS**, item 15. Nonrenewal is deleted in its entirety and replaced with the following:

15. Nonrenrewal
    If we decide not to renew your policy, we or our authorized representative will mail to the first named 'Insured', at the address shown on the Declarations Page, written notice of nonrenewal. The written notice will be mailed to the first named 'Insured' at least forty-five (45) days before the end of the policy term. A copy of the notice will also be sent to any lienholder named on the Declarations Page. If we decide not to renew your policy, our mailing of notice to the address of the first named 'Insured' shown on the Declarations Page will constitute proof of notice as of the date we mail it.

**GENERAL EXCLUSIONS**, item 4. is deleted in its entirety:

All other terms, conditions, and limitations of the policy remain unchanged.

 **MARKEL AMERICAN INSURANCE COMPANY**

---

<div style="border:1px solid black">

### GENERAL AMENDATORY ENDORSEMENT

</div>

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel Helmsman Yacht Policy is amended as follows:

**DEFINITIONS**, item 13. **Marine electronics** is deleted in its entirety and replaced with the following:

13. **Marine electronics** means electronic devices designed specifically for marine ship to ship or ship to shore communications or marine navigation, including fish finders, radar, sonar, GPS, GPS tracking, and related software.

**GENERAL CONDITIONS** is amended by adding the following:

When, in our sole discretion, an **insured yacht** is determined by us to be in a condition(s) that renders it either unseaworthy, unfit or in imminent peril, we reserve the right, in our sole discretion, to either restrict navigation of the **insured yacht** (port risk afloat) or require the **insured yacht** to be out of the water and ashore (port risk ashore) for as long as it takes to remedy the condition(s) and demonstrate to us that the condition(s) have been eliminated. Written notice will be mailed to the first named 'Insured' at the last known address shown in our records.

**GENERAL EXCLUSIONS** is amended by adding the following:

No coverage is provided under this policy for any claim for loss, liability, damage, or expense brought by or on behalf of any person or persons, including any paid captain and paid crew member, directly or indirectly on account of, resulting from, or arising out of sexual molestation or harassment, corporal punishment, physical or mental abuse or the transmission or contraction of a communicable disease.

**PHYSICAL DAMAGE**, 1. Coverage, a. Hull Coverage (Including **Tenders**), iii. What We Pay, item 3) Actual Cash Value is amended by adding the following sentence in its entirety:

Any partial loss resulting from **windstorm** will be paid on an **actual cash value** basis.

**PHYSICAL DAMAGE**, 1. Coverage, a. Hull Coverage (Including **Tenders**), iv. Exclusions, item 4) is deleted in its entirety and replaced with the following:

4) **windstorm** for any **canvas**, or **tender** that is not described on the Declarations Page and a separate limit for 'Tender Coverage' is not shown on the Declarations Page. **Canvas** as used in this section means any protective cover made of canvas or manmade material commonly known as eisenglass or similar material attached thereto, and hardware such as zippers, buttons and snaps;

All other terms, conditions and limitations of the policy remain unchanged.

# MARKEL AMERICAN INSURANCE COMPANY

## WRECK REMOVAL ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel Helmsman Yacht Policy is amended as follows:

**PROTECTION AND INDEMNITY,** Coverage is amended by deleting the following paragraph in its entirety:

> If a premium is shown on the Declarations Page for 'Hull", we will also cover the reasonable expenses incurred to raise, remove or dispose of the wreck of the **insured yacht**, or **non-owned yacht**, if you are legally obligated to do so.  This is not additional insurance, but is included in the limit of Protection and Indemnity coverage.

**PROTECTION AND INDEMNITY**, Coverage is amended by adding the following:

> We will cover the reasonable expenses to raise, remove or dispose of the wreck of the **insured yacht** if you are legally obligated to do so, subject to a maximum of $15,000 for any one **occurrence**.  This is not additional insurance, but is included in the limit of Protection and Indemnity Coverage.

All other terms, conditions, and limitations of the policy remain unchanged.

 **MARKEL AMERICAN INSURANCE COMPANY**

---

## WINDSTORM HAULOUT CONDITION

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel Helmsman Yacht Policy is amended as follows:

| Schedule | |
|---|---|
| **Insured yacht**: | 1987 OCEAN SS |
| | XYU5444FC787 |

**GENERAL CONDITIONS**, item 1. Use of the **Insured Yacht** is amended by adding the following restrictions on the use of the **insured yacht**:

If you violate any of the following conditions, coverage will be suspended until you are no longer in violation:

If a **windstorm** warning is issued for the location where the **insured yacht** is located, the **insured yacht** shall be on land.

If a location is shown below, the **insured yacht** shall be on land at the specified location as described.

Specified Location:

ENGLEWOOD, FL

All other terms, conditions, and limitations of the policy remain unchanged.



# MARKEL AMERICAN INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.

MIL 1214 09 17                                                                                       Page 1 of 1

# MARKEL AMERICAN INSURANCE COMPANY
# MARKEL INSURANCE COMPANY

**MARKEL**

## FLORIDA POLICYHOLDER DISCLOSURE OF FEES

Please be advised that policyholders will be subject to the following fees, where applicable.

**Installment Fees**
An Installment Fee will be included on any payment when the policy is paid using an installment plan.  The Installment Fee is $2.00 per payment when the policyholder is enrolled in an automatic payment plan.  The Installment Fee is $3.00 per payment when the policyholder is not enrolled in an automatic payment plan.

**Reinstatement Fee**
A Reinstatement Fee of $20.00 will apply on any reinstated policy which had previously canceled or lapsed due to non-payment of premium.

*MHY00000826603*